of the United States, Mr. Manning. Good morning, Your Honor, and now for something completely different. My name is Jason Mann, and I represent Preston McCord, a veteran. And the issue before the court is what I have called in my brief as the Offset Retirement by VA First Rule. I'm going to refer to it today as the VA First Rule. And what it does is it says that when a veteran is converted from severance to military disability retirement as a result of proceeding through the Physical Disability Review Board or through the Board for Corrections of Military Records, any back pay that is awarded is first reduced retroactively, month by month, by the VA payments that the veteran received during the retroactive period before recovering the severance, which everyone agrees is due back to the government because when you're on disability pay, you're no longer entitled to the severance. And the effect of the VA rule is illustrated by this case, where the government implemented the trial court decision and told Mr. McCord that he'd be entitled to only $3760 in back pay and he wouldn't receive that. And they owed the government $25,876. Your suggestion is that he's entitled to receive both his military disability and his VA benefits for this period? For this period. Now I want to separate $1174 from $5304. You've got to generally agree that you're not entitled to receive both military disability. You're not entitled to receive, and I'm focusing on receive. The issue that we have here with $5304 is it's being... So because it's back pay... Don't interrupt. Sorry. Because it's back pay, he's better off than if it had happened simultaneously? Yes. Because that's the way the text reads. Right now, he is worse off for having... Isn't the question whether the veteran is compensated twice as opposed to when he's compensated? Pardon? Isn't the question here whether the veteran has been compensated twice as opposed to some temporal issue when he was compensated? I think the issue is first. When the back pay award is issued, what is offset first? Is the VA offset first, or is the severance offset first? Now if the severance is offset... That seems to be a different... You've got two different questions here. Let's try not to conflate them. One is whether he can get both disability pay and veteran's benefits for the period this earlier period. The second one is whether he doesn't owe the government his severance pay because it should have been offset. Well, I would rephrase the question if I can. I think the first question is when the back pay award is issued... But aren't there two separate questions here, two separate arguments that are being made? Yes, there are. And I'm trying to rephrase them the way I'd like the court to look at them. And the way I'd like the court to look at them is first look at what Section 1174H and the command that the severance be recovered from the back pay. So even if you disagree with me on the issue of concurrent receipt, in other words, if you accept the government's argument that it applies retroactively, matching it month by month by month by month, that before you can do that, you have to recover the back pay. Excuse me, you have to recover the severance. Yes, but that particular issue doesn't have any impact on the amount that the veteran would recover here. It would have changed the calculation of how the back pay is... Yes, but answer my question. It would not affect the amount that the vet recovers. It would not affect his back pay award, but it would eliminate his severance overpayment. So basically you're asking us to determine that he doesn't owe money to the government. We don't have jurisdiction. That's not what the system is designed to do. There's another mechanism for determining whether debts are owed to the government. No, I'm asking you to conduct a judicial review of the severance of the calculation that they have performed. Did you make this argument in your briefs? Which argument is that? That severance should be offset first. Yes, we called it the VA first. We said that the threshold issue is that Section 1174H requires that the back pay be reduced by the severance. But the only consequence of that is that he doesn't owe debt to the government. It doesn't affect his recovery here, as you've admitted. I don't understand how the Court of Federal Claims has the authority to determine whether somebody owes money to the government. It has authority to determine how his back pay is computed. And that's what we're asking you to review. It has no effect on his back pay. Well, if the Court says that, that's the way I phrase it, that there must be an impact on the back pay. Remember, we're dealing here with the implementation of the trial court's decision, which is unappealed. And if the Court is going to say that it cannot conduct judicial review of the calculation, then I'm back into the issue of what does 5304 mean. And 5304, which distinguishes between 5304C, which clearly was amended to provide the retroactive matching period by period, with 5304A, which doesn't. When you consider Judge Kaplan's reasons, she has two paragraphs in her opinion as to why the government ought to waive the overpayment, which is horritory. It's not binding on anybody. But those are the same reasons 1174H was enacted to require that the government conduct the back pay calculation by first applying the severance to it and then applying the VA offset to it. The result here is just horrible for veterans in the sense that the Physical Disability Review Board was created to encourage veterans to go through this process. And then at the end of this process, congratulations, you've won your disability case. You owe us $20,000, $30,000. I mean, can that be right? Could that be what Congress intended? Well, you may have a good argument on the merits. The problem is that that's not what the Court of Thorough Claims is supposed to do, is to determine whether somebody owes a debt to the government. Well, again, I think the court can review the back pay computation, whether or not it ends up exactly the same. It doesn't affect the back pay computation. Pardon? It doesn't affect the back pay computation. It doesn't affect the amount of back pay that he recovers. Not unless you agree with me on 5304, and that 5304 does not apply retroactively month by month, based on the change in the difference in the language of 5304A and 5304C, with 5304A using the words may concurrently and 5304C requiring exactly the kind of retroactive matching month by month that the government was trying to read into 5304A. And, of course, there's 5304V, which also uses the temporal present tense language. You know, there's a Chevron Step 2 issue here lurking, which the government has declined to advance. And what I would say is that, at the very least, you have to find 5304 ambiguous between, because the language in A is different from the language in C. And having waived the Chevron Step 2 issue, you then have to drop down to the pro-veteran canon in this case. You may wish to reserve the Step 2 issue for another day. But in this case, where Step 2 has been waived, and 5304 is at the very least ambiguous, because what is the explanation of A and C having different language? And C having exactly the same language that the government is trying to put into A, but isn't there? So if the court is going to, Your Honor, if it's going to say it doesn't have jurisdiction to review the 1174H calculation, and we're stuck with 5304, then, at the very least, you have to say that that language is ambiguous. And having waived Step 2 dropped down to the pro-veteran canon in this case. And I reserve the time for Berdullo. Thank you. Thank you, Mr. Manning. Good morning, Your Honors. May it please the Court? Mr. Billingham. Could you address this exhaustion issue, please, with respect to the copayments? I simply do not understand how the government can take the position that the Court of Federal Claims shouldn't award him the amount of copays that he improperly had to make without going through an administrative process. What regulation says that, under these circumstances, he has to go through an administrative process? So the Trent Care Regulation set up a claims process to determine how much money he is owed. This is sort of a but-for-world analysis. How does that process address copayments that were made to private insurance companies that shouldn't have been made? How does that process possibly encompass that? Copayments have been made. To private insurance companies. The Tricare process deals with copays that were made as part of the Tricare process, not copays that were made to private insurance companies. Right? Mr. McCord has been paid for these, so we're not disagreeing or appealing anything the judge did. His copays, he argued, would not have been elected to private health care. What does the Tricare system have to do with making that determination? That makes no sense to me. It does not, and we did not involve Tricare in that determination. What administrative process does he have to exhaust? So there's two forms of his medical claims. One is the Tricare premium payments, the difference between what he would have paid, which we agreed with had he been in the service retired, and what he did pay in private life. The difference was about $7,000. The judge awarded that. We didn't contest it. There was a second aspect, the so-called out-of-pocket expenses. So he had a plan of a certain sort, and that plan probably required him to pay copays. A private plan. He had a private plan when he was in the service. What's the administrative system for claiming amounts that were paid to a private plan? You haven't cited a regulation? So he is in the but-for world. The Tricare regulations, which he cited, and the judge certainly cited, claims are submitted under 32 CFR 199.7. So what we're attempting to do, there's really not much we can fight about. Do you understand my question? What does the Tricare claim system have to do with a claim for amounts that were paid in connection with a private insurance carrier that were improperly resulted from his not being covered by Tricare? As a result of the fictionalized relation-backed doctrine, which will treat him as he would have. Do you understand my question? I'm trying my best. What possible application do the regulations for Tricare reimbursement have to do with the situation we're talking about here? What regulation says you've got to go and make your claim as part of the Tricare system? It's part of the general principle of damages. To prove what his damages- General principle of damages? The question is, what would have been his costs for medical care had he been in the service? We're comparing the but-for world to the actual world. In the actual world, he says he had to pay co-pays. And perhaps there were charges that exceeded what his insurance company would pay. Courts determine damages. What regulation says that where you have damages, you've got to go through a Tricare claim system? What regulation says that? To state his claim, to state his claim at all, he has to establish what the difference would be between the co-pays- let's focus on those- that he paid in the actual world and the co-pays he would have paid in the but-for world. Now, it depends on the operation. So, for example, let's say that he went to his private health care and he said, I need cosmetic surgery. The question is, in the but-for world, and they said you're going to have to pay $75 for that. That's your co-pay. I understand how the calculation of damages works. What I'm asking you is what regulation says that when the government improperly deprives you of Tricare coverage and you have to make private insurance co-pays, that there's an administrative system that you have to exhaust before you get compensated for that? Well, this is a question of loss. There is a regulation called Submission of Claims. What regulation says you have to submit this claim to the VA? Nobody says you have to- not to the VA. Or where? So, nobody says you have to do anything. 132 CFR 199.7, the Tricare regulation, establishes a way for determining whether the costs he incurred on the outside would have been incurred if he were retired. Counselor, is that regulation you're citing, the process provided under it, is it mandatory or permissive? It is the way, if you've gone to an outside provider- Is it mandatory or is it permissive? It's the only way to determine what your damages are. It's the only way to get your claims paid. So you're saying it's mandatory, that you have to go through this process? In the administrative realm, it would be. Show me what regulation says he has to go through this process. This is the way for him to have his claims paid for those- What regulation? 32 CFR 199.7. Where is that in your brief? It sets out the claims. Is that attached to your brief? I don't know it's attached to the brief. I think the court cited these regulations. I don't know whether the judge specifically referred to them. There it is. So on page 10. Of which? Of your brief? No, Your Honor, I'm sorry. It's of the administrative record. This is the judge's decision. In the appendix? It's the appendix. In the blue brief? It's the joint appendix, page 10. It's the last page of the judge's decision. Where's the text of the regulation? The second paragraph on that page. Finally, the court notes Mr. McCourt's concern, the TRICARE, etc., etc. And then at the end of that sentence, it's 32 CFR 199. Yeah, but what does the section say? It simply establishes a method. A method for what? If you want money out of TRICARE, this is the system for submitting your documents. He doesn't want money out of TRICARE. He wants money that he was owed as a result of a judgment of the court of federal claims. Right. So now we're back to my original idea. That in order to establish in the but-for world that his claims would have been different, he has to know what would have been paid under TRICARE. So, for example, if he has these claims for dermatology, he would have to show in the but-for world, if he'd gone to TRICARE, they wouldn't have said, cosmetic surgery is my example, we don't pay for cosmetic surgery, so you get zero for that. But you won't know that until you look at his plan. Like he's a member of, I think it's an HMO-style plan. TRICARE has several. TRICARE Select is a fees for services plan. So we're talking about out-of-pocket expenses here. Right. So, for example, Your Honor. My question is, is this process you're describing, is it mandatory or is it permissible? The answer to that question has a relationship to whether we send this back now and find a failure to exhaust. Right. So it's only mandatory in the sense that if you want your money, this is how you get it. Someone has to determine how much money you're entitled to. Isn't that the regulation that says when you get a judgment from the court of federal claims, you have to go to the TRICARE system? That's right, Your Honor. That's 100% right. But the court was correct in acknowledging that until the forms were submitted, as this court recognized in Barnett. TRICARE has no authority to award damages or to calculate damages for people, right? No, that's right. But the court. Then what's to exhaust? We can call this a failure to state a claim. No information was submitted by Mr. McCord that would allow the court to recognize that based on the benefit that he was awarded by the ABCMR, that he would have been paid the $10 copay, the $50 copay, the unreimbursed expenses, whatever. It depends on his particular plan. And only a claims analyst working for TRICARE could say, based on your health care prime plan, we would have charged you $10. You were charged $20 when you were in private life, and so we owe you $10. But there's no way to know that without knowing the exact nature of his plan. There's a form. Mr. Mann has this form. That's what he was doing before the Court of Federal Claims. Before the Court of Federal Claims, he's asserting a claim for out-of-pocket expenses. Right. And he's got his data. He's got all this information there. The court says, I can't decide that. You must go back and exhaust your administrative remedies. Right. But yet, you can't point to a regulation that requires him to exhaust his remedies. What I'm saying is the court had no way of determining what he would have been. So, yes, he has gross receipts. The court could have decided the issue. It could have, but he did not. So I'll have to push back on the premise of your question, Your Honor. He did not submit all the information. To make a viable claim for damages, he would have had to have said, I spent the $7,000 or so he did spend, and then make the case that, just as he did for his premium. That may be true, but the court didn't rule that. The court ruled, you have failed to exhaust your administrative remedies. I must send it back. And I'm asking you, where in the regulation does it show that this procedure is mandatory? Because if it's not mandatory, then perhaps a judge erred in sending it back. It's the only way to get money. It's the only way for the judge to know how much money is owed on his damages claim. If he had set forth, I'll agree with you under this premise. The premise of your question, Your Honor, was he set forth sufficient information or whatever. I'm saying he did not. If he had set forth the information, if he had said, I paid this much on the outside for these operations, and I can show you or under my TRICARE plan, I would have had to only pay this much, and the judge had ruled on that, we certainly would have asked the judge to remand him for an expert opinion. But if she had not, we'd be in no position really to argue. What you're saying is that he didn't prove his damages, which is quite different from exhaustion. I'll agree to that. Okay. I'll agree to that. And I think the judge is only using shorthand to say go back to TRICARE, and if you're satisfied there with your $7,000 or so claim, we've saved ourselves some work. If you're not, you can certainly file another claim. That's certainly not novel. The Court has no further questions concerning the other matters in the case. The question of his, as Mr. Mann says, he has his present tense argument. The nature of the exercise here is all we're doing is putting Mr. McCord in a position he would have been in. This is what the Court of Claims called in Kimmel the fictional relation back doctrine. So we're walking him through the process as if he had been there in real life. What is the process for determining whether there should be a waiver of the severance pay claim that the government is proposing? He submitted a request. DFAS has authority up to, I think, $10,000 to approve a claim or to deny a claim and can recommend approval of a claim up to the amount in question, $25,000. If they make a recommendation above their limit or if they make a denial, Mr. Mann can appeal the denial. There's a process for a notice, a chance for him to respond, a statement of the case by the higher agency. The determination has been yet made initially as to whether to waive or not? That's right. When is that expected? I'm told generally it takes DFAS in the 30 or so day process once they have a complete claim to determine whether they will, this is $25,000, your authority is $10,000. So you first have to make a recommendation. They can deny, there's been no such determination. I understand it's on an analyst's desk right now. They can recommend the full amount be paid, the $25,000. Any denial or any recommendation above $10,000 must go to the Defense Office of Hearing and Appeals, DOHA. They then will, if it's a recommendation, they'll act on it. I understand they take sometimes up to six months. If there's a denial, they'll be given an opportunity to Mr. McCord to submit briefs against the denial and DOHA will then review that appeal. So it's likely a number of months in order to resolve a $25,000 claim. It has to go to a higher level. I understand there is a backlog. I also understand that DOHA tries to prioritize cases that are in litigation. So how much exactly it would take, I don't know. I wouldn't expect before the end of the year for sure. No further questions? No.  Thank you, Honor. Just a few short comments on reply. First, we prove the TRICARE damages the same way we prove the premium damages. And you'll see in the appendix pages 1177 to 1206, we submitted the explanation of benefits forms, which is what the government attorney told me they wanted to see, and we proffered a calculation. The same thing we did with respect to the premiums. We proffered documentation and we proffered a calculation. They did not object to the calculation in the Court of Federal Claims. So for them to say, well, we can't figure it out until you submit the forms and it goes through the TRICARE process and blah, blah, blah, blah, blah, blah, that was the time to say it in the Court of Federal Claims when we proffered the damages. I do want to take one more run at persuading Judge Dyke. You've got to persuade him. I know. More than just me. I know, I know. I'm going to cite you to 1491A2. Because remember, we're not trying to litigate. The amount of the severance overpayment is not in dispute.  This severance overpayment is what the severance overpayment is. The question is, does the Court of Federal Claims have jurisdiction to review the computation of the back pay award? And your Honor says, well, it's not going to result in anything. But I would point you to A2, which says that in order to provide a complete remedy for a, afforded by the judgment, and I had a preexisting judgment that's not before you. This is just the implementation of the judgment piece. That the Court may as incident to and collateral to any such judgment, blah, blah, blah, issue an order for correction of applicable records. And that's what I'm asking the Claims Court to do. To correct the records to show how the back pay was computed. I'm not sure. Again, we had jurisdiction because it was a money payment case on the principal claim. The principal claim isn't before you. The question here is ancillary relief. And the statute clearly gives the Court the right to order the agency to correct the records. The records that we're asking to be corrected are the DFAS calculation of 1176 and 1177 of the appendix. The last thing I would like to mention is, you've asked questions about the waiver. I can tell you that DFAS doesn't open its mail for 30 days. We submitted a waiver request and where is it? I don't know. When did you submit the waiver request? July, maybe. DFAS does not respond to letters. I've discovered that when I send them a Privacy Act release, they wouldn't acknowledge me. Finally, I got somebody on the phone who told me that they have a special form that they want. A point of contact form. And if you submit this magical form, this form allows DFAS to talk to you. I've written enumerable letters to DFAS and they ignore it. Somebody told me, oh, you have to submit this form. Then they'll talk to you. And they do. The best way to talk to them is through these tickets. We put a computer ticket in. It's like an IT ticket if you've ever done one of those. And then they write back to you. But as far as the, is it going to happen in 30 days? No. And my main concern here is the collection machine has been turned on. And what does the collection machine do? It uses all the full remedies of the Federal Debt Collection Act and it just marches forward and marches forward and marches forward against this veteran who through no fault of his own, through the fault of the federal government, now has an overpayment of $25,000. And since I have two minutes and 15 seconds left, I want to make one other thing. Because I feel very bad about this because I did not know about the federal management regulations. I've been practicing administrative law for 45 years. And DOD really takes the cake when it comes to unpublished regulations. I've dealt with, for 35 years of my life, I've dealt with the Medicaid program. So I'm familiar with guidance and I'm familiar with interpretive rules. But in DOD, it's like all of it is unpublished. And you can't find something if you don't know it exists. And I had training on this. I mean, so. What unpublished regulation are you talking about? FMR. FMR. From now, of course, every veteran that comes into my case who says he wants a disability, I tell them, did you receive severance? If you receive severance, you're going to get worse off. You've got to know that before we go through this process. At the end of the day, they may say, congratulations, you won your case. Are these arguments that you briefed? Pardon? Are these arguments that you briefed? Some of them are. Now I'm just using my one minute to rant. Thank you, Your Honor. Thank you. Thank you both. Case is taken under submission.